Case number 16-8045, RFF Family Limited Partnership Appellant versus John Joseph Louis Johnson III, Appellee. Oral argument not to exceed 15 minutes per side. Mr. Levinson for the appellant. You may proceed. Good afternoon, Your Honors. Jeffrey Levinson on behalf of RFF Family Partnership, LP, the appellant in this matter. I would like to reserve, if I may, two minutes for the rebuttal. Thank you. May it please the Court, a couple preliminary matters actually. First, I want to thank the Court for adjourning the prior argument, scheduled argument in this case to allow the parties time to try and reach a consensual resolution. We tried hard, but we did not get there. But nonetheless, thank you. Thank the panel for that. And second, with the decision of this Court affirming the decision of the Bankruptcy Court, which held invalid our asserted lien against the debtor's contract in this case and its proceeds that narrows the issues, which are before the Court this afternoon, to the following. And those are whether the Bankruptcy Court erred when it held that if RFF becomes an unsecured creditor with an allowed non-dischargeable claim, RFF would have a right only to pro rata payments with the other unsecured creditors during the life of the third amended plan, which I'll refer to as the plan. And second, that the automatic stay of Section 362A3 will prevent RFF from attempting to obtain possession of or otherwise exercise control over the earnings of the plan that the plan, I'm sorry, permits the debtor to use for his living expenses and various holdbacks or provides to other unsecured creditors on a pro rata basis. The background of this case is detailed in our briefs, but to summarize quickly, the Family Partnership is one of many private lenders to the debtor and it has timely filed a proof of claim in the amount of approximately $1.7 million. The Family Partnership has commenced an adversary proceeding contesting the debtor's discharge from the RFF claim under Section 523 of the Bankruptcy Code due, among other things, to the debtor's false representations and warranties and his manifest intent to thus defraud the Family Partnership and induce the Family Partnership to loan the debtor money. Counselor, excuse me. Yes. I have a question. Do both of the now narrowed issues that you present to the Court this afternoon depend on your success in the nondischargeability action? Yes, they do, Your Honor. So if you lose the nondischargeability action, these issues go away and you have no complaint with the Bankruptcy Court's ruling. Is that correct? That is absolutely correct. So it's part of our argument today that the Bankruptcy Court's opinion was preemptive, premature, and did not allow for the possibility, since the plan doesn't allow for the possibility, that our claim will be determined to be nondischargeable and then the issue becomes what our rights are from there. The playing field has sort of already been established by the plan as approved by the Court and our rights are therefore limited. My argument, our argument, is that under law, the holder of a nondischargeable claim has certain rights under the Bankruptcy Code. And the way that this has all been set up, those rights are prejudiced. So while we believe that the Court's ruling was preemptive and premature, it nonetheless cuts off the rights that we believe we have as the holder. Are you equating nondischargeability with some sort of priority claim? Not necessarily a priority claim, but we have rights outside of the plan. It's held in this context where you have an individual debtor, the confirmation of a plan does not bind the holder of a nondischargeable claim. And there's case law that we cite in our briefs which allow for the enforcement of nondischargeable claims outside the plan, notwithstanding. During the life of the plan? During the life of the plan, correct, Your Honor. If you look at the case law, there is. So a plan couldn't bind a student loan holder? Actually, these are cases involving the IRS, but the bankruptcy courts are not distinguishing or relying on specific statutory authority of the IRS to enforce their rights. It's merely the fact that they hold nondischargeable claims under 523, which gives them rights, notwithstanding confirmation of the plan, to pursue their nondischargeable claim against the debtor. So one of the cases you say, I think, Newman was after the plan was essentially completed, wasn't it? That is correct, but the holding in that case, Your Honor, first of all, it cites cases holding that creditors holding nondischargeable claims may pursue post-confirmation collection efforts outside of bankruptcy, whether or not the claims are provided for in the plan. Certainly in that case, yes, the IRS's filings were made and the actions that they took were post-consummation, if you will, but that is not the language that the court used. The court relied on the statutory language and the holdings of the other courts cited in that decision, which allowed for that creditor to pursue its rights, irrespective of confirmation because the claims were nondischargeable. So don't get hung up on the Newman facts. Look to the law that supports Newman is what you're telling me. Correct, Your Honor, yes, and I think that the decision cited in the case, excuse me, particularly the Howell case from the Middle District of Florida, 1988, which states, quote, under Section 1141A of the Bankruptcy Code, the holders of nondischargeable debts under Section 523 of the Bankruptcy Code are expressly accepted from those persons who are bound by the provisions of a confirmed plan. Accordingly, there can be no doubt that a creditor who has a debt accepted from discharge under Section 523 cannot be bound by the provisions of a confirmed plan. Close quote. That's it, 84-BR-834-836. But Howell proposed to basically let a creditor who had a nondischargeable debt be paid in full, and the other unsecured creditors objected, didn't they? Or did I have the wrong Howell case? That I'm not sure, Your Honor. That doesn't sound familiar. I apologize. That's fine. I'm not remembering correctly. It's our position that to the extent that the automatic stay applies with respect to the debtor's post-confirmation income, there can and should be nothing that would absolutely prohibit the family partnership from seeking relief from stay, whether as the holder of a nondischargeable claim. So, again, I'm not sure the issue is right, but all of this, if I could sort of bring it back, arises in the context of feasibility from our perspective. And getting back to the Court's question, the authorities that were cited in the decision of the bankruptcy court confirming the plan all were Chapter 13 plans. And there's a distinction here in that under Chapter 11 to confirm a plan, you have to satisfy the feasibility requirement. From our perspective, the feasibility requirement means that Chapter 11 is intended to deal with all claims and not just some or part of those claims, and particularly where those claims are significant, like the RFF claim here. A Chapter 11 debtor may not pick and choose to address only certain claims or portions of those claims within his plan and prevent collection for the term of that plan. To hold otherwise, we submit, encourages abuse. A Chapter 11 debtor could file a plan dealing with only certain of his debt and, as here, retain his income as part of the estate and then rely on the automatic stay to preclude creditor collection action for the life of the plan, provided only that he has the support of those creditors being paid under the plan, the requisite amount to obtain confirmation, without any showing, as here, of an ability to address the non-plan treated debt. All of this debtor's income for the foreseeable future is dedicated to payment of claims against this estate, including my client's claim, but it does not address or allow for the possibility that my client will have a non-dischargeable claim. So it's not that we are being treated or being asked to be treated as a priority claim. The point, I think, that we're trying to make is that the plan here effectively subordinates our claim and leaves us. Your client could receive 100% under this plan. I'm sorry? Couldn't your client receive 100% payment on its claim during the plan term? The other creditors have agreed to cap their unsecured pro rata claims, correct? Correct. The other creditors have agreed to cap their recovery in certain percentages. If those caps were met, then it would only be your client receiving payment pro rata, assuming the debtor's continued success in his field. And we all hope for that, but there's no certainty, Your Honor. The issue is what we know. Does feasibility require certainty? Feasibility requires a certain measure of certainty. It requires that you be able to address your claims feasibly, and if you are allocating, as I say, the bulk of your value to other creditors and withholding it through the device that exists here from a creditor who may have a non-dischargeable claim. What is being withheld from your client? Our ability to pursue the relief that we're entitled to as, again, we assert a non-dischargeable claim holder. If you are receiving payments on a claim pro rata with other creditors? We're entitled to. It's tied up, actually, in the adversary proceeding. But you're right, Your Honor, correct. If our claim were deemed allowed, which it's not because I've objected, we would be receiving pro rata treatment with the other unsecured creditors. The issue, though, again, is that we believe we hold a non-dischargeable claim, one that cannot be bound by the plan, and we ought to be able to enforce that claim in accordance with our rights. And there's authority, and we cited in the brief, that that is a recognized right, that notwithstanding confirmation of a plan, that creditors have the right to hold non-dischargeable claims to enforce those claims, notwithstanding the confirmation of a plan. That Howell case you talk about, there's this portion toward the end that says, the bankruptcy policy for this treatment, allowing distribution to a creditor holding a non-dischargeable debt, is that it is not fair to penalize other creditors of the debtor by paying out of the pot of assets in the estate, liabilities arising from the debtor's deliberate misconduct. On the other hand, after discharge, which in this case occurs after five years, these liabilities, such as yours, have no priority in payment from the estate but would survive as continuing debts after the case. The case isn't over for five years. So I don't think this case supports what you're talking about. I would dispute that theory as articulated by the Howell court, particularly under the facts of this case, where our allegation is that the debtor benefited through these loans that it obtained from my client. And it's through that benefit that this debtor got to where he is and is able to make the distributions that he's making. So I don't know that I would characterize it necessarily as penalizing the other creditors. We have rights, and those rights are set. You don't have any more rights than the other creditors until after the case is over with, do you? That presumes that we, as a non-dischargeable claim holder, may not enforce our claim until after consummation of the plan. But doesn't that give you priority over similarly situated creditors in the plan? We have a claim that would entitle us to 100% payment by virtue of its non-dischargeability. The other creditors do not. So, therefore, they're entitled to whatever pro-rata share that they have.  But we are, in addition, because it's non-dischargeable, entitled to enforce our claim in full. We're not bound by the terms of the confirmed plan, which allocate value based on the structure of the plan. So what would happen if the plan said, we pay your client 100%? We believe that that would have been the appropriate result, or at least to reserve for it in the event that our claim were held to be non-dischargeable. Because this plan didn't do that. I see you're out of time. Yeah, I'm sorry. I can answer your question. Because this plan didn't do that, we believe that the plan is fatally infirm under the feasibility requirement. We're effectively subordinated, and we don't believe that that's appropriate under the circumstances of this case where our claim arose on account of the debtor's fraud. Thank you, Your Honors. Thank you. Good afternoon, Your Honors. Rocco Debitetto on behalf of the Apolli, John Joseph Lewis Johnson III. Thank you very much for entertaining these arguments today. I'd like to lead off with one point, and counsel is up here discussing how they're holding a non-dischargeable claim. Well, as we sit here today, they don't hold a non-dischargeable claim. And I think that's one very fundamental issue that can't be overlooked at this point, if only because in every single case cited by them in support of their argument, there was somebody actually holding a non-dischargeable claim, whether that was by statute, by reason of taxes, whether that was by reason of adjudication in a non-dischargeability proceeding. In each and every instance, there was somebody holding a non-dischargeable claim. And I think that's an important point because they're saying that the court, bankruptcy court here, was being, in essence, preemptive in confirming the plan and not providing for their non-dischargeable claim to be paid or not allowing for them to, in essence, go after plan assets. I think it's the other way around. I think that it's RFF, in fact, being preemptive because they're assuming that they have a non-dischargeable claim. With respect to sort of the narrowing of the issues, this case is very similar to the one in Eagle Pitcher. And it's a Sixth Circuit case, I believe, from 1993 on equitable mootness. And what's going on here is very similar to what happened in that case. In that case, there was a creditor that was opposing confirmation of the plan. And in particular, they were arguing that the plan was not feasible because it created an asbestos trust. And they argued that claims couldn't, in essence, be channeled. And I believe this was one of the earlier cases in which that occurred. So they said, look, this case is not feasible. Plans should not be confirmed. When they were faced with an equitable mootness argument, they said, whoa, let's back off, let's narrow these issues down, and we only want to focus on the procedures by which distributions are made in this case. And the Sixth Circuit there, and admittedly this is an unpublished opinion, so it's of limited precedential effect, but I think it's illustrative of where the Sixth Circuit's head is at here. They said, look, this attack that you're having on the distribution procedures is affecting the reliance interests of third parties here. And by affecting the reliance interests of third parties here, we have to find this appeal equitably moot because you just can't do that. So I think we have a very analogous case here. We have, in essence, RFF coming in and saying, judge, don't confirm this plan. It is not feasible. And then as you read through the briefs and as we get here today, they're backing away from the issues. But that doesn't change the essence of the relief they're asking. And I would like to correct one point, because they did talk about the reliance interests in their brief, and that was at page 10 of the reply brief, where they're essentially saying that, look, all of the settling creditors here went in eyes wide open, knowing fully well what could happen on appeal. And in doing so, they cited pages 77 and 78 of the transcript. Well, that portion of the transcript and the discussion therein was a discussion of the secured claim and not of the non-dischargeability action. That wasn't brought up in terms of feasibility. That wasn't an eyes wide open issue. An eyes wide open issue that everybody knew about was the fact that the secured claim could, in fact, be upheld. That's the claim in the player's contract. That's what everybody knew about going eyes wide in, and I think that was a fair characterization, but not a fair characterization as presented in the reply brief. I'd also like to note that in the cases that they're citing, Newman, as the panel pointed out, is an IRS case. The plan was consummated. The plan payments had been made. After the case was closed, the IRS went after additional taxes that it accrued post-petition. I think that's important. And even when you look at the cases cited within, I don't think any of them give any support for the case here. For example, Bartleson. In that case, there was a creditor holding a non-dischargeable debt that was allowed to collect where the plan did not have an injunction against it. So the plan didn't prevent anything from going forward. There's the case of Brotby, and in that case, the court held that 1141 did not operate to prohibit enjoining collecting non-dischargeable debt. That was the issue, and then remanded the case for findings on an injunction. Another case, McConaughey. The plan essentially provided, excuse me, the attacks on the plan income. Excuse me, the attacks were after the plan was confirmed. All the plan payments were made, and the case was closed. So, again, very readily distinguishable here. And then Howell, which seems to be the discussion of the day. I would agree with the panel that it does not support the case here. In Howell, what happened was there was, again, a holder of non-dischargeable debt, and the plan provided that this claimant was going to get paid to the tune of $300 a month, increasing to $500 a month, and then sort of carrying off into perpetuity until the non-dischargeable debt was paid in full. Well, the creditor there said, wait a second, we can't do that because you're limiting my ability to go after non-plan assets, essentially. And the court said, you know, that's right. These sorts of creditors, creditors with non-dischargeable debt, have the right to participate pro rata with other creditors, and that's certainly what the plan here does in our case. And then after that, though, you can't tie their hands after the plan has already run its course. You can't just say, look, you're going to accept these payment terms into perpetuity. That's what they were trying to do in Howell. So I would think that all of the cases that are cited in Newman, which itself is readily distinguishable, just don't lend itself to support here. And I think we haven't really gotten to the discussion of the actual statutory provisions that are at play here. And what's going on here is expressly permitted in the plan. 1141B expressly provides that if there's property of the estate, it vests in the debtor upon confirmation unless the plan or confirmation order provides otherwise. Well, here it provides otherwise. And so as long as it's property of the estate, we look straight to 362A3 that protects it from creditors  And then obviously once you get to 362C, when the property is no longer property of the estate, or ultimately if the case is discharged or closed or dismissed, then the automatic stay goes away. So as Judge Hoffman found, each of these statutory provisions were put into effect in the plan. It's well within the right of the debtor. And the reason we did that, the reason the court approved it, was to protect the plan assets, to enable the plan to come to fruition. And I think that's really important because at the end of the day, what we have here is a plan that has implemented more complicated settlements than I can articulate standing here to this panel. The court went to great lengths to denote how much was settled here, how contentious everything was. And as we stand here today, things continue to unfold in terms of settlements. EOT, which was a holdout at the time of confirmation and was a holdout when briefing closed, has in fact settled. So we now have settled seven of eight of the largest claims, all pursuant to the plan provisions. We're now left with RFF. Counselor, so you're saying that the equitable mootness argument relies primarily on the structure of the distributions that the bankruptcy court approved. And the creditor body has relied on that process or structure, irrespective of what the dollar amounts end up being at the end of the day. And it is that reliance, which you argue, makes this appeal moot. Is that correct? Yeah, certainly reliance is a component of the equitable mootness. And I believe the city of Detroit case emphasized that it's probably the most important of all the factors of equitable mootness. And here the factual findings by Judge Hoffman clearly denote that the largest creditors in this case have agreed to terms and are in fact relying on this plan. So now the panel here is faced with a couple of options. Do you reverse – do you say, look, the plan wasn't feasible? And in which case you have a wholesale reversal. Well, I think that's an absolute travesty to all of the reliance interests that have been set into effect by this plan. So what's the alternative then? I guess the alternative would be to narrow the issue and say, okay, we're going to interlineate the plan and say that, you know what? If there's a non-dischargeable claim here for RFF, they can go ahead and attack plan assets. Well, I would submit that that's creating a feasibility issue on its face. Because you have all of these creditors that have submitted in the trial court that the plan is feasible because they know they're going to get or reasonably believe they're going to get the promised payments. But now if RFF is allowed to attack plan assets with impunity, well, I would say now a feasibility issue is created. So I don't think any way you slice this, it's good for anybody under that plan. And again, I come back to the point of the settlements were complicated. This was a hotly contested case. It continues to be a hotly contested case with RFF to this day. But the fact remains that seven of eight of the largest creditors, roughly 12 of 14 million in claims, are now settled. Adversary proceedings have been resolved. Non-dischargeability actions have been resolved. The creditor trustee has taken over. The creditor trustee is liquidating assets. The creditor trustee is settling actions of his own. This case is far down the line. And a lot of people have relied on it. And it is an ugly, ugly case. And, you know, don't take my word for it. Don't take my word for it at all. The judge went to He wouldn't contest if this hockey player got income separate and apart from his wages, something that's not carved out in the plan, that RFF could go, if it got a non-dischargeable judgment, could it go against, if he got an inheritance or something? No, because all income is subject to the plan. All income. That's the way the plan reads. So wherever he's getting it from whatever source, it's used to pay the creditors, subject to the living allowance in the plan. So if he gets an endorsement, an inheritance, whatever, it's also Lottery. Lottery, that would be just fine. So is RFF really wanting to attack the living expenses? Is that what we're getting to at the end of the day? That might be part of it. But it doesn't matter what they want to attack because the court found that the living expenses, though they were high and the court said, you know, relative to Judge Hoffman's experience, it was high and the court was readily open that he struggled with it. But at the end of the day, we have to look at it as the means of enabling the debtor to continue producing. It's like putting working capital into a business. And I think at the end of the day, that's the analogy to draw. And indeed, the creditors that were at the confirmation hearing recognized that what he's receiving now, it's actually less than the minimum starting salary in the NHL. So he's doing his part. And RFF is getting what RFF is entitled to under the plan. That is pro rata payments if they ever have an allowed claim. The money will be there for them. And if they have a non-dischargeable claim, there is nothing in that plan that's prohibiting them, that is affecting that non-dischargeable claim in the sense that it will survive. And at the end of five years, if they have a non-dischargeable claim, well, that's something Mr. Johnson is going to have to worry about then. And that's the way bankruptcy works. If you get a non-dischargeable claim, sorry, game's up. No pun intended. But again, I come back to the point that it was a very complicated case. It remains a very complicated case. These settlements are in the best interest of the estate, as Judge Hoffman found. There are significant reliance interests. Don't take my word for it. You can look at the 300-page preliminary witness, expert witness report that was going to go forward. You can look at the captions of the many filings, just the captions in the case, to see how contentious this was. And I think if anything disrupts this, it's only going to be bad. It might even set this case up for a conversion to Chapter 7, which RFF said in its own words would return pennies on the dollars. Their words, not mine. And as we all know, the debtor tried to convert his case early on. It did not work. And one of the items that the debtor was scrutinized on was his failure to pursue a plan. Well, here the debtor has not only pursued a plan, the debtor has confirmed one. So if we're sent back to the bankruptcy court on reversal, I don't know what's going to happen, but it could very well set the case up for conversion. Thank you. Thank you. Your Honors, in the brief time that I've got left, I would respectfully direct the panel to the reply brief that we filed. I think that that details in exacting fashion our response to this mootness argument. But there is one point that I'd like to highlight. Actually, a couple of points. First, with respect to the fact that we do not hold at this time a non-dischargeable claim, we concede that, certainly. But nonetheless, our point is that by foreclosing, our ability to obtain what we believe to be the relief that a non-dischargeable claim holder has, that this plan violates the feasibility requirement. That's the point of our appeal. And I think as Eppley's counsel just made clear, they've tied everything up here. There is nothing available for my client. And because of the fact that this debtor's primary income is derived from contracts as a professional athlete, there is a good likelihood, particularly in a sport like hockey, there is an absolute likelihood that there may be nothing there for my client. This has been set up in a way, and I would submit it's an artifice in the sense that they made his living expenses to remain part of the estate. Those funds, as part of the estate, there is no moment when those vest in his hands. They are until they're paid to the creditors, his current creditors. And so this is, as I said, Do you object at the trial level to these expenses? We did. We did because they exceeded the statutory amounts. That was our position. Yes. And I also want to address, well, I see my time has expired. So thank you, Your Honors. Thank you.